IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
June 24, 2008 Session

## ALLISON LYNN SIMMONS v. RICHARD LEE SIMMONS

**Appeal from the Circuit Court for Robertson County**
**No. 10661     Ross Hicks, Judge**

_____

**No. M2007-01582-COA-R3-CV - Filed March 27, 2009**

_____

Husband appeals two convictions of contempt of court and sentence of two days incarceration for each finding of contempt. Finding no error on the part of the trial court, we affirm the convictions.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, P.J., M.S., and ANDY D. BENNETT, J., joined.

J. Todd Faulkner, Nashville, Tennessee, for the appellant, Richard Lee Simmons.

Kimberly Lane Reed-Bracey, Goodlettsville, Tennessee, for the appellee, Allison Lynn Simmons.

### OPINION

This case comes before us for the second time. The parties[1] were divorced by Final Decree entered on December 29, 2004; on January 31, 2006, this Court modified and affirmed the trial court's judgment. A petition was filed in the trial court on January 6, 2006, seeking to hold Husband in contempt of court for failing to comply with various provisions of the Final Decree.[2] The petition was accompanied by a Notice informing Husband that he was charged with criminal contempt in violation of Tenn. Code Ann. § 29-9-101, *et seq.*, and advising him of the constitutional rights attendant thereto. Husband responded to the Petition, largely asserting that he was unable to pay the alimony and child support obligations imposed upon him; by counter-petition, he requested the court modify the child support and visitation provisions of the parenting plan. By Order entered August 16, 2006, the trial court granted Wife partial summary judgment on the counter-petition and reserved all other matters for final hearing.

---

[1] In this Opinion, the parties will be referred to according to their designation in the trial court.

[2] The January 2006, Petition made reference to an earlier Petition for Contempt in which a judgment was entered in Wife's favor in the amount of $9,464.00. Issues arising from the earlier proceeding are not directly involved in this appeal.

On December 11, 2006, Mother filed a document styled "Motion for Additional Counts of Contempt and for Sanctions and Other Matters," seeking relief against Husband for matters primarily related to his failure to comply with discovery. A notice informing Husband of his constitutional rights accompanied the motion. A hearing was held on the contempt petition and counter-petition on December 18, 2006; Husband was present at the hearing. He was found in contempt of court for failure to comply with discovery requests and to appear at a noticed deposition; he was sentenced to the Robertson County jail until such time as he provided certain information to Wife's counsel. The court also entered a judgment in the amount of $45,411.78 for delinquent child support, alimony and medical and health insurance expenses and $4,250.00 for Wife's counsel fees. The court set a further hearing for April 5, 2007, to consider the imposition of sanctions for criminal contempt. The order reflecting the court's action at the December 18 hearing was entered on January 31, 2007.

On April 5, 2007, the court entered an Agreed Order which provided, in part pertinent to this appeal, as follows:

> 7. [I]t is agreed between the parties that the total amount due and owing unto [Wife] to relieve [Husband] of his arrearage amounts, the balance of his alimony obligation, and the balance of his health insurance obligation to [Wife] so long as said health insurance premium does not increase, and attorney's fees amounts to $67,940.01 and the said amount is heretofore reduced to judgment for which execution may enter.
>
> [Husband] agrees to pay in cash or certified funds unto [Wife] the sum certain amount of $66,600.00 no later than April 20, 2007. In the event the check is not tendered by April 20, 2007, [Husband] shall be deemed in direct civil contempt of this Honorable Court's Orders and shall report to the Robertson County jail on said date no later than 6:00 p.m. and shall remain in the Robertson County jail until said check is tendered.
> ***
> 10. It is further ORDERED, ADJUDGED and DECREED that the [Husband] shall pay unto the [Wife] the sum certain and full amount of $66,600.00 no later than fifteen days from the entry of this Order. The remaining balance, $1,340.01, shall be paid in full no later than December 31, 2007. If the $66,600.00 check is not tendered within fifteen days from the entry of this Order, [Husband] shall be deemed in civil contempt of this Honorable Court's Orders and he shall report to the Robertson County jail by 6:00 p.m. on the 20th day of April, 2007 and shall remain incarcerated until the check is tendered.
>
> 11. It is further ORDERED, ADJUDGED and DECREED that [Husband]. . . is heretofore [sic] enjoined and restrained from saying anything negative to the minor children regarding his living situation or financial situation. . . . He is further enjoined and restrained from saying anything negative about [Wife] . . . to the parties' minor children.
> ***

13.  It is further ORDERED, ADJUDGED and DECREED that all other matters in this cause are reserved until a review hearing in this matter to be held on the 1st day of May, 2007 at 9:00 a.m. to ensure that [Husband] has complied with all aspects of this Order.  In the event that a review hearing is not necessary on May 1, 2007, counsel for [Wife] shall so notify the Court.

Husband failed to appear at the May 1 hearing and on May 29, 2007, the court entered its order relative to the May 1 review hearing.[3]  The court found that Husband received funds from his retirement account on April 17; that he did not deposit the funds into his account until April 19; and that, although the April 5 order called for Husband to tender cash or certified funds, he had delivered a personal check in the amount of $66,600.00 to wife's counsel on April 19, which could not be cashed until April 26.  The court found that Husband was "irrefutably responsible for at least two days of the delay between April 20 [the date set in the April 5 order for him to turn over the funds] and April 26, 2007" and ordered him to report to the Robertson County jail to serve two days.  The court set a further hearing on the matters relating to Husband's statements to the children.  The findings of the court included the following:

> This Court believed [Husband] actually *got it* on April 5, 2007.  Apparently, [Husband] has not.  This Court has had it with [Husband] and his attitude regarding this Court's Orders. [Husband] needs to understand and comprehend that the Court will not tolerate his actions. (Emphasis in original)

Wife filed an Amended Petition for Contempt on May 15, 2007, alleging, *inter alia,* that various communications between Husband and Wife and Husband and the children violated the court's prior orders.  The Amended Petition was accompanied by a Notice advising Husband of his constitutional rights.  Following a hearing on June 5, 2007, the court entered an order on the additional allegations of contempt contained in Wife's May 15 amended petition, as well as a petition to relocate, which she had filed.[4]  Husband was found guilty of one count of contempt, related primarily to conversations with his children regarding Wife's proposed move to New Orleans.

The court granted Husband bond pending this appeal, which encompasses both findings of contempt.

## STANDARD OF REVIEW

The factual findings of the trial court are accorded a presumption of correctness and will not be overturned unless the evidence preponderates against them.  *Moody v. Hutchison*, 159 S.W.3d 15, 25-26 (Tenn. Ct. App. 2004) (citing Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721,

---

[3]  No transcript of the May 1, 2007, proceeding is in the record in this appeal.

[4]  The court's disposition of Wife's petition to relocate is not at issue in this appeal.

727 (Tenn. 2001)).  With respect to legal issues, our review is conducted "under a pure *de novo* standard of review, according no deference to the conclusions of law made by the lower courts." *Id*. at 26 (quoting *Southern Constructors, Inc. v. Loudon County Bd. Of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001)).

## ANALYSIS

### A.  First Finding of Contempt

Husband does not take issue with the court's factual findings relative to the timing of the receipt of the funds into his account; that he did not tender cash or a certified check to Wife as called for in the order; and that his personal check could not be cashed until April 26.  Husband does not contend that the notices of constitutional rights he received were in any way inadequate or that he was not sufficiently advised of the acts which were alleged to be contemptuous.  He contends that the April 5, 2007, order mentioned only civil contempt and that there was no notice that criminal contempt would be sought at the hearing on May 1; consequently, his due process rights were violated and the conviction cannot stand.

The May 29 order finding Husband in contempt of court included the following language:

> It is, therefore, ORDERED, ADJUDGED and DECREED that [Husband] is heretofore found in contempt of this Honorable Court regarding the monies which were to be delivered in cash or certified funds no later than Friday, April 20, 2007. Based upon the aforementioned findings, [Husband] shall be sentenced to two (2) days in the Robertson County Jail and the reporting of the same forty-eight hours shall be provided at the aforementioned contempt hearing.[5]

We agree with Husband that the May 29 order found him in criminal contempt of the April 5 order.  Criminal contempt is punitive in nature and its primary purpose is to vindicate the court's authority. *Thigpen v. Thigpen*, 874 S.W.2d 51, 53 (Tenn. Ct. App. 1993) (citing *Gunn v. Southern Bell Tel. & Tel. Co.*, 296 S.W.2d 843, 844 (Tenn. 1956) *Garrett v. Forest Lawn Memorial Gardens*, 588 S.W.2d 309, 315 (Tenn. Ct. App. 1979)).  On the other hand, the purpose of civil contempt is "to coerce compliance with the court's order and [it] is imposed at the insistence and for the benefit of the private party who has suffered a violation of rights." *Doe v. Bd. of Prof. Resp.,* 104 S.W.3d 465, 473 (Tenn. 2003) (citing *Black v. Blount,* 938 S.W.2d 394, 398) (Tenn. Ct. App. 1996)).  By May 1, when the finding of contempt was made, Husband's check had cleared the bank and the funds were available to Wife.  It is clear from the record that the court's effort was directed toward vindicating its authority and punishing Husband for his recalcitrance in complying with the April 5 order.

---

[5] The order set another contempt hearing on matters related to Husband's compliance with restraining orders issued by the court for a time at which he would be present.

Our holding that Husband was held in criminal contempt, however, does not end our inquiry. The question before us is whether Husband was given the notice required pursuant to Rule 42, Tenn. R. Crim. Proc. that criminal contempt sanctions would or could be sought at the May 1 hearing. To resolve this question, we look to the entire record.

The court's January 31, 2007, order reserved the issue of criminal contempt originally sought (and notice of constitutional rights given) in Wife's January 6, 2006, petition, as supplemented in her December 11, 2006, filing (notice also given), for the hearing set for April 5. Specifically, the January 31 order provided:

> The Court shall consider where [Husband] is in relation to his obligations which exist before the Court on the date of today's hearing. If [Husband] is not essentially current in his obligations between now and then as well as current on the obligations which accrue between now and then, [Husband] is going to be facing a specific jail sentence for criminal contempt. . . . For whatever reason, [Husband] has made up his mind that he is not going to comply with the orders of this Court. This Court is giving [Husband] until April 5, 2007 at 9:00 a.m. to not only change his mind about that but to demonstrate through his actions that his mind has been changed.[6]

It is clear from the fact that the April 5 hearing resulted in the order at issue in this appeal that Husband had not become current in his obligations. Husband's agreement to the order entered at the hearing allowed him to avoid the "specific jail sentence for criminal contempt" threatened in the January 31, 2007, order. In the April 5, 2007, order Husband agreed to, *inter alia*, the amount of the child support and alimony arrearage, the payment of the arrearage by April 20 and that, if he did not make the payment by April 20, he would be "deemed in direct civil contempt" of the court's orders. Husband also agreed that "all other matters in this cause" were reserved until the May 1, 2007, review hearing. There is nothing in the order or elsewhere in the record to indicate that the April 5 order resolved the issue of criminal contempt or that Husband did not face the possibility that he would be found in criminal contempt at the May 1 hearing. The evidence fully supports the trial court's finding that Husband was in criminal contempt of the order and sentence of him to two days in jail.

## B. Second Finding of Contempt

The order entered after the June 5, 2007, hearing provided in part:

> Based upon the testimony here today, the Court finds him guilty of one count of contempt only, and that is related to his conversations concerning the move to New Orleans and his comments about "I can say anything I want to my kids." [Husband] cannot say anything he wants to his kids and that is specifically provided for in the

---

[6] We have reviewed the transcript of the December 18, 2006, hearing and the court's order entered January 31, 2007, accurately reflects the holdings and orders of the court at the hearing.

previous orders of this Court. . . The Court hereby sentences [Husband] to two days for his contempt in that conversation and that two days shall run concurrent with the two days that the Court has previously ordered.

Husband challenges the sufficiency of the evidence to sustain the second finding of contempt, contending that the statements cited by the court were not prohibited in the prior orders.

In determining the sufficiency of the convicting evidence, the appellate court does not re-weigh or re-evaluate the evidence. *State v. Johnston*, No. E2002-02028-CCA-R3-CD, 2003 WL 23094414, at *3 (Tenn. Crim. App. Dec. 30, 2003) (citing *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990)). Nor may we substitute inferences for those drawn by the trier of fact from circumstantial evidence. *Id.* (citing *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956)). To the contrary, a court is "required to afford the state the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence." *Id.* (citing *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978)). Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, not this court. *Id.* Therefore, this court will not disturb a verdict of guilty due to the sufficiency of the evidence unless the relevant facts contained in the record are insufficient, as a matter of law, for a rational trier of fact to find that the accused is guilty beyond a reasonable doubt. *Id.* (citing *State v. Tuggle,* 639 S.W.2d 913, 914 (Tenn. 1982)); s*ee* Tenn. R. App. P. 13(e).

The portion of the April 5 order relevant to this issue provided as follows:

It is further ORDERED, ADJUDGED and DECREED that [Husband] is heretofore [sic] enjoined and restrained from stating anything negative to the minor children regarding his living or financial situation. . . . He is further enjoined and restrained from stating anything negative about [Wife] to the parties' minor children.

Husband does not dispute the court's finding that he made the quoted statement and the record includes the transcript of a taped conversation in which he made the statement.[7] His argument is that the cited words were not specifically prohibited by the court's April 5 order and that he did not speak to his children of matters specifically prohibited in the order. The order holding Husband in contempt, however, found that the content of the statement showed contempt for the court, *i.e.*, that, in accordance with the plain language of the April 5 order, he was not able to say "anything I want" to his children, but that statements to them regarding certain matters were prohibited.

Courts in Tennessee are permitted to punish, as contempt of court, the "willful disobedience or resistance of any . . . party . . . to any lawful . . . order, . . . or command of such courts." Tenn. Code Ann. § 29-9-102(3). As noted above, we do not substitute inferences we might draw from

---

[7] The tape was not made an exhibit to the hearing and is not a part of the record on appeal.

facts for those drawn by the trial court. *Johnston, supra*. Having found sufficient evidence to support the trial court's finding that Husband made the statement which served as the basis of the finding of contempt, we cannot say that the trial court's determination that the fact that Husband made the statement constituted sanctionable contemptuous conduct on his part was error. The trial court had a long history with Husband, observed him at the hearing, and heard the tape of the telephone conversations where the statement was made. The sentiment expressed in Husband's remark, along with the history of Husband's resistance to the orders of the court, supports an inference that the statement constituted resistance to the court's order.

## CONCLUSION

For the foregoing reasons, the judgment of the Circuit Court is affirmed and the case remanded for further proceedings in accordance with this opinion.

_____
RICHARD H. DINKINS, JUDGE