# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs November 29, 2001

## STATE OF TENNESSEE v. STEPHEN BART WOOD

**Appeal from the Criminal Court for Davidson County**
**Nos. 3098 & 3099     Steve R. Dozier, Judge**

---

### No. M2001-00872-COA-R3-CD - Filed May 7, 2002

---

The General Sessions Court of Davidson County found the defendant guilty of thirty-six violations of an order of protection and ordered him to serve ten days for each violation. Each sentence was to be served consecutively and day-for-day. The defendant appealed to the Criminal Court and that court affirmed. We find that the Criminal Court lacked subject matter jurisdiction to hear the appeal and that the sentence should be vacated. Because Tenn. Code Ann. § 36-3-601(2)(F) now provides for an appeal in the Circuit Court from a final ruling on an order of protection by a General Sessions Court, we remand this cause to the Circuit Court for a review of the sentence for excessiveness, in accordance with the guidelines we adopt in this opinion.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed; Vacated and Remanded

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which WILLIAM C. KOCH, JR. and WILLIAM B. CAIN, JJ., joined.

C. Dawn Deaner and Jonathan F. Wing, Nashville, Tennessee (on appeal); Jonathan F. Wing and Holly Ruskin, Nashville, Tennessee (at hearing), for the appellant, Stephen Bart Wood.

Paul G. Summers, Attorney General & Reporter; Elizabeth B. Marney, Assistant Attorney General (on appeal) and Angelita Dalton, Assistant District Attorney General, Nashville, Tennessee (at hearing), for the appellee, State of Tennessee.

### OPINION

### I.

Connie Robbrecht Wood obtained an Order of Protection against her husband, forty-year-old Stephen Bart Wood, on August 9, 2000. The order, which was issued by the General Sessions Court of Davidson County, prohibited Mr. Wood from abusing, threatening to abuse, or committing violent acts against his wife. On August 25, Ms. Wood asked the court to modify the order to prohibit social contact as well. She claimed that he had called her numerous times at work and on her cell phone. The court granted the request on September 11, 2000.

On December 29, 2000, Ms. Wood swore out an affidavit which led to the issuance of an arrest warrant against Mr. Wood. The affidavit stated that Mr. Wood had sent her two letters on December 2 and 12, 2000; that he had come to her residence and spoken to her on December 25 and 28; that he had telephoned her at home five times on December 25, and 28 times on December 28; and that he had called her at work nine times on December 26, and 44 times on December 27.

A second warrant was issued on January 23, 2001, supported by another affidavit, which stated that since the issuance of the first warrant, Mr. Wood had called his wife at home 116 times; had called her at work 67 times; had left one letter at her home, another in her mailbox, and two in the windshield of her car; and had sent flowers and a card to her at work.

Mr. Wood was arrested on both of these warrants. He pled not guilty, but the General Sessions Court found him guilty of eighteen counts of contempt on the first warrant and eighteen counts of contempt on the second warrant. He was sentenced to ten days for each violation, for a total sentence of 360 days, to be served consecutively, day for day. The judge apparently believed that he could not sentence the defendant to more than six months on any single warrant.

Mr. Wood appealed to the Criminal Court for Davidson County pursuant to Tenn. Code. Ann. § 27-3-131.[1] Though he requested a jury trial in his application, the request was waived at the commencement of the hearing in Criminal Court.

During the hearing, which was conducted on March 2, 2001, the defendant conceded that he was in contempt of court, and asked only to be heard on the question of sentencing. He argued first that because only two warrants were issued in this case, the maximum incarceration he could have received was ten days per warrant. He then contended that even if the thirty-six counts of criminal contempt were found to be justified based on the warrants, there were no grounds presented for the sentences to run consecutively.

The defendant noted that the Sentencing Commission Comments appended to Tenn. Code. Ann. § 40-35-115 of the Criminal Sentencing Reform Act of 1989 state that "consecutive sentencing should not routinely be imposed in criminal cases and the aggregate maximum of consecutive terms must be reasonably related to the severity of the offenses involved." *See also Gray v. State*, 538 S.W.2d 391 (Tenn. 1976), and *State v. Taylor*, 739 S.W.2d 227 (Tenn. 1987).

He further contended that even if he should be required to serve his sentences consecutively, he should be entitled to other benefits of the Criminal Sentencing Reform Act, such as the provision which states that when sentencing a misdemeanor defendant, the judge must "fix a percentage of the sentence which the defendant shall serve," ranging from zero to seventy-five percent. Tenn. Code Ann. § 40-35-302(d). We note that under that statute, after the defendant has served the required

---

[1]Tenn. Code. Ann. § 27-3-131 applies to misdemeanor cases, and declares that in such cases, "the defendant may . . . appeal a verdict of guilty or the sentence imposed or both to the circuit court or criminal court for a trial de novo with or without a jury."

percentage, he becomes eligible for release, but not necessarily entitled to release. *See State v. Palmer*, 902 S.W.2d 391 (Tenn. 1995).

During the hearing in Criminal Court, Mr. Wood stated that after he was served with the Order of Protection, he was in a daze, and didn't really understand its import. He admitted, however, that when he finally understood it, he still felt compelled to "do the decent thing, and take care of a wife and a child that's gonna be there soon." Under further questioning, he stated that he now realized that he was to have no contact whatsoever with his wife except through a court order. The prosecutor argued, however, that the defendant totally disrespected the orders of the General Sessions Court, and could possibly disrespect an order of the Criminal Court as well. At the conclusion of the hearing, the trial court took the matter under advisement.

The trial court's order, issued on March 7, correctly noted that since the hearing was de novo, the court was not charged with the responsibility of reviewing the propriety of the sentence imposed by the General Sessions Court. Rather, the court stated, its duty was to make an independent determination of what the appropriate sentence should be.

The court rejected all the defendant's arguments for leniency, noting that the contempt statutes gave it the authority to imprison the defendant for ten days and/or fine him for every violation he committed, as well as to impose consecutive sentences for criminal contempt. *See* Tenn. Code Ann. § 29-9-102, 103 and Tenn. Code Ann. § 40-35-115(b)(7). The court then stated that it found the appropriate sentence to be "ten days in jail for every violation to be served day-for-day at 100%. Thus the total incarceration is three hundred sixty days."

Mr. Wood filed a timely Notice of Appeal in the Court of Criminal Appeals, which in most cases is the appropriate place to lodge an appeal from the criminal courts. However, the State filed a Motion to Transfer the appeal to the Court of Appeals. *See* Tenn. R. App. P. 17.

The State observed that Tenn. Code Ann. § 16-4-108(b) gives the Court of Appeals appellate jurisdiction over civil or criminal contempt arising out of a civil matter, and contended that proceedings instituted under the Domestic Abuse statute are civil and protective, not criminal and punitive. On November 19, 2001, the Court of Criminal Appeals granted the State's motion, and transferred this appeal to this Court.

**II.**

The first question we must answer is which court has jurisdiction to hear an appeal from a general sessions court of a finding of criminal contempt arising out of a civil matter. The difficulty comes from the multiple ways we treat criminal contempt. On one hand we say criminal contempt is quasi-criminal, *Anderson v. Daugherty*, 191 S.W. 974 (Tenn. 1917); therefore guilt must be proved beyond a reasonable doubt, *Shiflet v. State*, 400 S.W.2d 542 (Tenn. 1966); and the prosecutor may not appeal an acquittal, *Archer v. Archer*, 907 S.W.2d 412 (Tenn. Ct. App. 1995). It is enough of a crime that the double jeopardy provisions of the state and federal constitutions prohibit a

subsequent contempt prosecution after a contempt proceeding starts and comes to an inconclusive end in another court. *Ahern v. Ahern,* 15 S.W.3d 73 (Tenn. 2000).

On the other hand, it is not enough of a crime to prevent a prosecution for kidnapping after the accused is found guilty and punished for criminal contempt for the same conduct. *State v. Sammons*, 656 S.W.2d 862 (Tenn. Crim. App. 1982). *See also State v. Winningham*, 958 S.W.2d 740 (Tenn. 1997). It does not have to be initiated by an indictment or presentment. *Green v. United States*, 356 U.S. 165 at 184 (1958). Nor does the right to a trial by jury, that ordinarily attaches to any prosecution where incarceration may be imposed, attach to a prosecution for criminal contempt under the general contempt statutes. *Pass v. State*, 184 S.W.2d 1 (Tenn. 1944); *Ahern v. Ahern*, 15 S.W.3d 73 (Tenn. 2000); *cf. State v. Dusina*, 764 S.W.2d 766 (Tenn. 1989).

Since criminal contempt proceedings are not fully criminal, *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418 (1911), we conclude that they do not fall under Tenn. Code Ann. § 27-3-131 nor under Tenn. R. Crim. P. 5(c)(2) which provide for misdemeanor appeals from the general sessions court to circuit or criminal court. Therefore, these statutes/rules did not give the Criminal Court of Davidson County the jurisdiction to hear the appeal of the contempt charges arising from the violations of the General Sessions Court's order of protection. Although the jurisdictional question has not been raised by the parties, we feel compelled to deal with it and do so under Tenn. R. App. P. 13(b)(3). *See Dishmon v. Shelby State Community College*, 15 S.W.3d 477 (Tenn. Ct. App. 1999).

## III.

If not to the criminal court, then where does one appeal a sentence of criminal contempt for violating an order of protection? When the legislature created orders of protection in 1979 it provided that they could be issued by other courts in addition to the ones that traditionally hear domestic cases. In Davidson County the courts having jurisdiction included "any court of record with jurisdiction over domestic relations matters and the general sessions courts." Tenn. Code Ann. § 36-3-601(2)(B). Until the 2001 session of the General Assembly, however, the domestic abuse statutes were silent on the question of where to appeal an order of protection granted by the general sessions court.[2]

The question had previously been submitted to the Attorney General of Tennessee, and in Opinion No. 98-043, 1998 WL 129995, the Attorney General said that because the general sessions court was exercising concurrent jurisdiction with the courts of record, an appeal from the general sessions court should go directly to the Court of Appeals. In *Collins v. Pharris*, No. M1999-00588-

---

[2]In 2001 the General Assembly added subsection F to Tenn. Code Ann. § 36-3-601(2) which now provides:

Any appeal from a final ruling on an order of protection by a general sessions court or by an official authorized to issue an order of protection under this subdivision (2) shall be to the circuit or chancery court of the county. Such appeal shall be filed within ten (10) days and shall be heard de novo.

COA-R3-CV, 2001 WL 219652 (Tenn. Ct. App. Mar. 7, 2001), this court held that the Attorney General was correct. *See also Garrison v. Burch*, No. M1999-02819-COA-R3-CV, 2001 WL 47001, at *1 n.2 (Tenn. Ct. App. Jan. 22, 2001). We think the same reasoning would have applied to a contempt proceeding for violating an order of protection. Without specifically deciding the question, we have accepted and decided domestic abuse contempt cases on direct appeal from the general sessions court. *See State v. Gray*, 46 S.W.3d 749 (Tenn. Ct. App. 2000). Of course, with the passage of Tenn. Code Ann. § 36-3-601(2)(F) that question may now be moot.

## IV.

We vacate the judgment of the Criminal Court of Davidson County since jurisdiction of the appeal from the General Sessions Court lay in this court. But now we must decide if the appeal to the Criminal Court kept the appeal alive until it finally reached this Court.

The defendant filed two documents in the General Sessions Court, each purporting to appeal the two warrants under which he was charged with contempt. Each contained the following paragraph:

> Comes now the defendant, by and through counsel, pursuant to TCA § 27-3-131(a) and hereby makes formal demand for appeal of the General Sessions judgment in the above-referenced matter, to the Criminal Court of Nashville-Davidson County.

We think the quoted paragraph complies with the content requirements for a notice of appeal. *See* Tenn. R. App. P. 3(f). It specifies the party taking the appeal, names the judgments from which relief is sought and it designates (although wrongly) the court to which the appeal is taken. But Rule 3(f) also says that an appeal should not be dismissed for informality of form or title of the notice of appeal. And Tenn. Code Ann. § 16-4-108 (a)(2) provides that appeals taken to the wrong appellate court shall be transferred to the court having jurisdiction. We think the appeal was still alive when it finally arrived here.

## V.

If we are correct so far, disposing of this appeal remains a problem. We are handicapped, of course, by the absence of a record from the General Sessions Court. Therefore, the review here must necessarily be confined to the questions of law raised by the appellant. *See Dispeker v. New Southern Hotel Co.*, 373 S.W.2d 904 (Tenn. 1963); *Hutchison v. Pyburn*, 567 S.W.2d 762 (Tenn. Ct. App. 1977).

The appellant argues that since all the violations of the order of protection were listed in two warrants the maximum penalty to which he could be sentenced was twenty days in jail, ten days for each warrant. *See* Tenn. Code Ann. § 29-9-103. We disagree. Tenn. R. Crim. P. 42(b) governs how notice of a charge of indirect criminal contempt can be given: "The notice shall be given orally by the judge in open court in the presence of the defendant or, on application of the district attorney

-5-

general or of an attorney appointed by the court for that purpose, by an order to show cause or an order of arrest." The notice may specify multiple violations so long as they are sufficiently distinct to support separate convictions. *Cable v. Clemmons*, 36 S.W.3d 39 (Tenn. 2001). The appellant does not dispute the result in *Cable v. Clemmons* but argues that that proceeding was started by a petition and not a warrant. We think that is a distinction without a difference. The warrant used in this case served the purpose of giving the notice required by Tenn. R. Crim. P. 42(b).

## VI.

The appellant also attacks the trial court's order making him serve the sentences consecutively and day-for-day. He relies on the Criminal Sentencing Reform Act of 1989 which requires that misdemeanants (except DUI offenders) be sentenced in accordance with the Act. Tenn. Code Ann. § 40-35-302(d) requires the court to set a percentage of the misdemeanor sentence (not to exceed seventy-five percent) which the defendant shall serve, and Tenn. Code Ann. § 41-2-111(b) allows a misdemeanant serving less than one year in a local jail to earn good conduct credits. *See State v. Sally J. Lane*, No. 01C01-9802-CC-00055, 1998 WL 748665 (Tenn. Crim. App. Oct. 23, 1998); *State v. James Kevin Underwood*, No. E2000-01945-CCA-R3-CD, 2001 WL 872436 (Tenn. Crim. App. Aug. 2, 2001). Finally, Tenn. Code Ann. § 40-35-103(4) requires that the sentence imposed should be the least severe measure necessary to achieve the purpose for which the sentence is imposed.

Again we are confronted with the question of whether criminal contempt arising out of a civil matter is enough of a crime that these criminal sentencing statutes apply. We have applied Tenn. Code Ann. § 40-35-115(b)(7) in a prior case where the issue was the imposition of consecutive sentences. *See Strzelicki v. McGriff*, No. M1999-00057-COA-R3-CV, 2000 WL 48501, at *7 (Tenn. Ct. App. Jan. 21, 2000). In *Strzelecki* we cited *State v. Ashby*, 823 S.W.2d 166 (Tenn. 1991), the Supreme Court's definitive statement on how the sentencing statutes operate. We have, since *Storey v. Storey*, 835 S.W.2d 593 (Tenn. Ct. App. 1992), consistently held that a prosecution for criminal contempt must proceed according to Tenn. R. Crim. P. 42. But in *Wilson v. Wilson*, 984 S.W.2d 898 (Tenn 1998), the Supreme Court held that in addition to the prosecutors named in Rule 42(b), a contempt charge arising out of a civil matter could be prosecuted by an attorney representing the other party.

There is not much authority across the nation on the question of whether criminal sentencing guidelines apply to criminal contempt arising out of a civil matter. In *Ex Parte Byram*, 679 S.W.2d 762 (Tex. App. 2nd Dist. 1984), the court held that a criminal probation statute did <u>not</u> apply to a person being held in jail for a contempt of a civil injunction. The court said:

> There is simply no authority for this proposition and we hold that this section of the Code of Criminal Procedure which permits probation under certain standard terms, does not apply to a case which involves contempt for violation of a civil injunction. There is no basis in law or in reason to support an opposite conclusion.

679 S.W.2d at 766. Otherwise, when dealing with the question, the courts do so on a piecemeal basis as we have in *Storey*, *Wilson*, and *Strzelicki*.

We hold that the portions of the criminal code that require the court to set a percentage of the sentence that must be served (Tenn. Code Ann. § 40-35-302(d)) and that allows a misdemeanant to earn good conduct credits while serving time in a local jail (Tenn. Code Ann. § 41-2-111(b)) do not apply to a defendant convicted of criminal contempt arising out of a civil matter. The possible punishment is already so limited (a $50 fine and/or ten days in jail, Tenn. Code Ann. § 29-9-103(b)) that the legislature could hardly have intended to mandate a further reduction.

There is, however, a principle embodied in the criminal statutes that we think applies wherever punitive incarceration is considered. Tenn. Code Ann. § 40-35-103(4) requires that the sentence be the least severe measure necessary to achieve the purpose for which the sentence is imposed. In this country, where freedom is highly valued and the fundamental laws (both state and federal) restrict the power of the government to infringe on that freedom, that principle should guide courts in the imposition of any prison sentence imposed for punishment. In the criminal law the courts exercise some control over punishment by subjecting sentencing statutes and orders of confinement to a proportionality test under the Eighth Amendment to the United States Constitution and Article I Section 16 of the Tennessee Constitution. *See State v. Harris*, 844 S.W.2d 601 (Tenn. 1992). In contempt the courts have said that in order to safeguard constitutional procedures courts should employ "the least possible power adequate to the end proposed." *In Re Michael*, 326 U.S. 224 at 227 (1945). Because the right to a trial by jury historically did not attach to a charge of contempt, *see Ahern v. Ahern*, 15 S.W.3d 73 (Tenn. 2000) and *Green v. United States*, 356 U.S. 165 (1958), appellate courts are charged with a special responsibility to see that the contempt power is not abused. The United States Supreme Court set out some of the factors that should be considered in reviewing a contempt sentence:

> [T]he trial judge may properly take into consideration the extent of the willful and deliberate defiance of the court's order, the seriousness of the consequences of the contumacious behavior, the necessity of effectively terminating the defendant's defiance as required by the public interest, and the importance of deterring such acts in the future.

*United States v. United Mine Workers of America*, 330 U.S. 258 at 303 (1947).

Of course we do not have a record of the proceedings in the General Sessions Court since those proceedings are seldom recorded. But if general sessions courts are asked to exercise concurrent jurisdiction with the courts of record they should make some provision for a record – especially where a person's liberty is at stake.[3] Without a record we have our doubts that putting the defendant in jail for a year is the least severe measure that will persuade him to respect the court's

---

[3]The problem may now be solved by the passage of Tenn. Code Ann. § 36-3-601(2)(F), providing for an appeal to the circuit or chancery court and a trial de novo.

orders. The victim's affidavits do not allege any violent or threatening behavior on the part of the defendant. Although in the absence of a record we would ordinarily presume that the lower court's action was correct, this case presents what we hope is a unique set of facts where the defendant thought he had a record (from the criminal court) only to be deprived of it because the law was unclear.

We reverse the sentence imposed on the defendant, but we do not reverse the findings of guilt against him. Because Tenn. Code Ann. § 36-3-601(2)(F) now provides for an appeal in the Circuit Court from a final ruling on an order of protection by a General Sessions Court, we remand this cause to the Circuit Court of Davidson County for a new sentencing hearing. Tax the costs on appeal to the State of Tennessee.

_____
BEN H. CANTRELL, PRESIDING JUDGE, M.S.